UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DERRICK SUTTON,

                    Plaintiff,

v.                                              1:21-CV-0181
                                                (GTS/TWD)

QUINNIPIAC UNIVERSITY,

                    Defendant.
_____

APPEARANCES:                                OF COUNSEL:

ANGEL A. CASTRO, III, ESQ.             ANGEL A. CASTRO, III, ESQ.
  Counsel for Plaintiff
8170 Trolleys End
Cicero, NY 13039

GREENBERG TRAURIG, LLP          A. MICHAEL PRATT, ESQ.
  Counsel for Defendant
MetLife Building
200 Park Avenue
New York, NY 10166

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

       Currently before the Court, in this civil rights action filed by Derrick Sutton ("Plaintiff")

against Quinnipiac University ("Defendant"), is Defendant's motion to dismiss Plaintiff's

Complaint for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or, alternatively,

failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 9), and Plaintiff's cross-

motion for leave to amend the Complaint (Dkt. Nos. 14-15). For the reasons set forth below, the

Court grants Defendant's  motion to dismiss for lack of personal jurisdiction under Fed. R. Civ.

P. 12(b)(2) and denies Plaintiff's cross-motion for leave to amend the Complaint.

I.      **RELEVANT BACKGROUND**

A.      **Plaintiff's Complaint and Relevant Procedural History**

Generally, in the Complaint filed on February 17, 2021, Plaintiff asserts the following claims: (1) a disability discrimination claim under Section 504 of the Rehabilitation Act of 1973 ("Section 504"); (2) a Section 504 hostile environment claim based on Plaintiff's disability under Section 504; (3) a race discrimination claim under Title VI of the Civil Rights Act of 1964 ("Title VI"); (4) a hostile environment claim based on Plaintiff's race under Title VI; (5) a disability discrimination claim under N.Y. Executive Law § 296(4) (the New York State Human Rights Law or "NYSHRL"); (6) a race discrimination claim under the NYSHRL; and (7) a breach-of-contract claim. (Dkt. No. 1 [Pl. Compl.].)

On April 29, 2021, Defendant filed its motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction and failure to state a claim. (Dkt. No. 9.) On June 4, 2021, Plaintiff filed his opposition to Defendant's motion to dismiss and a cross-motion for leave to amend the Complaint. (Dkt. Nos. 14-15.) On June 25, 2021, Defendant filed its reply in support of its motion to dismiss and its opposition to Plaintiff's cross-motion. (Dkt. No. 18.)

B.      **Summary of Parties' Briefing on the Parties' Motions**

1.      **Defendant's Motion to Dismiss**

Generally, in support of its motion to dismiss, Defendant argues that the Court should dismiss Plaintiff's Complaint because this Court lacks personal jurisdiction over Defendant, or, alternatively, because Plaintiff's Complaint fails to state a claim. (Dkt. 9-1.)

a.   **Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2)**

More specifically, Defendant argues that it is not subject to either the general or specific

personal jurisdiction of this Court. (*Id.* at 7-11.) With respect to the Court's general personal jurisdiction, Defendant argues that, under N.Y. C.P.L.R. § 301, courts consistently hold that a university and college is not "at home" for purposes of general jurisdiction outside of its state of incorporation or principal place of operation merely because it engages in "minimal and sporadic contact" with a state. (*Id.*) Defendant argues that the Complaint does not allege that Defendant engages in a continuous and systematic course of business in New York State such that the Court can deem Defendant "at home" there for purposes of establishing general personal jurisdiction. (*Id.*)

With respect to the Court's specific personal jurisdiction, Defendant argues that the factual allegations of the Complaint do not show that Defendant is subject to the specific personal jurisdiction of this Court under the New York long-arm statute, N.Y. C.P.L.R. § 302. (*Id.* at 8-11.) Defendant argues that it does not "[t]ransact[] any business within the state or contract[] anywhere to supply goods or services in the state," for the following reasons: (1) Defendant has no branch campuses in New York State, does not own property in the state, and has no bank accounts, telephone numbers, or mailboxes in the State (*id.* at 9; Dkt. No. 9-2, at ¶¶ 9, 11, 15 [Decl. of A. Zinn]); (2) Defendant derives no revenue from the State (Dkt. No. 9-1, at 10; Dkt. No. 9-2, at ¶ 16); (3) Plaintiff took all of his classes and "clinicals" in Connecticut (Dkt. No. 9-1, at 10; Dkt. No. 9-2, at ¶¶ 24-25); (4) all members of leadership of Defendant's Nurse Anesthesia Program (the "Program") worked in Connecticut (Dkt. No. 9-1, at 10; Dkt. No. 9-2, at ¶ 19); (5) all alleged actions related to Plaintiff's dismissal and appeal occurred in Connecticut (Dkt. No. 9-1, at 10; Dkt. No. 9-2, at ¶¶ 24-25); and (6) Plaintiff does not allege that Defendant exchanged written or telephonic communications with him while he was in New York State (Dkt. No. 9-1,

at 10).

Defendant further argues that Plaintiff's Complaint does not allege specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3) for the same reason that the Complaint does not satisfy N.Y. C.P.L.R. § 302(a)(1) (i.e., Plaintiff cannot establish that Defendant "regularly does or solicits business, engages in a persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in New York"). (*Id.* at 11.) Defendant additionally argues that the Complaint does not allege that Defendant expected or should reasonably have expected that its conduct would have consequences in New York State or that Defendant had "purposeful New York affiliation that it should have expected to be hauled into court in New York," as is required for specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii). (*Id.* at 11.)

### b. Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

Defendant argues the Court should dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(6) because Plaintiff failed to state a claim upon which relief can be granted. (Dkt. No. 9-1, at 11-22.) Generally, Defendant sets forth seven arguments. (*Id.*)

First, Defendant argues that the Court should dismiss Plaintiff's Section 504 disability discrimination claim because the Complaint does not allege a *prima facie* case of disability discrimination. (*Id.* at 11-13.) Defendant argues that the Complaint is devoid of facts showing Plaintiff is a qualified individual with a disability or that Defendant discriminated against him solely because of his disability. (*Id.* at 12-13.)

Second, Defendant argues that the Court should dismiss Plaintiff's Section 504 hostile environment claim because the Complaint does not contain facts that the alleged harassment was

related to Plaintiff's disability. (*Id.* at 13-15.) Preliminarily, Defendant argues that the viability of a Section 504 claim is questionable because the Second Circuit has yet to recognize this cause of action and district courts are split on the issue. (*Id.* at 14.) Defendant argues that even if this is a cognizable claim, Plaintiff does not allege sufficient facts in the Complaint to support an inference that he suffered harassment by Defendant because of a disability or that the acts he characterizes as harassing bore any relationship to his disability. (*Id.* at 15.)

Third, Defendant argues that the Court should dismiss Plaintiff's Title VI race discrimination claim because Plaintiff does not allege sufficient facts in the Complaint to make out his *prima facie* case. (*Id.* at 15-17.) Specifically, Defendant argues that the Complaint only alleges that Plaintiff is African American. (*Id.* at 17.) Defendant argues that the Complaint fails to allege that any adverse action was racially motivated, purposefully discriminatory, or that there was a causal link between Defendant's alleged conduct and Plaintiff's race. (*Id.*) Defendant further argues that the Complaint does not allege that Defendant treated Plaintiff differently or more harshly than other students in the Program that were not members of the same protected class. (*Id.*)

Fourth, Defendant argues that the Court should dismiss Plaintiff's Title VI hostile environment claim because the Complaint does not include facts showing severe and pervasive harassment related to Plaintiff's race. (*Id.* at 17.) Defendant argues that the Complaint does not allege that Plaintiff was the victim of any race-based harassment, much less harassment or mistreatment that qualifies as "severe, pervasive, and objectively offensive." (*Id.* at 18.) Defendant further argues that the Complaint does not allege that Defendant had any reason to suspect Plaintiff believed himself to be the victim of severe and pervasive harassment based on

his race by Defendant's officials or that Defendant had actual knowledge of any alleged race-based harassment and acted with deliberate indifference to that harassment. (*Id.*)

Fifth, Defendant argues that both of Plaintiff's NYSHRL claims fail as a matter of law.[1] As support for this contention, Defendant submits two main arguments: (1) Plaintiff's Complaint does not allege that a discriminatory act against Plaintiff occurred in New York State (*id.* at 19-20); and (2) the Complaint does not support a claim under NYSHRL § 298-A(1) because Plaintiff fails to allege he was a New York State resident when the alleged discriminatory conduct occurred, and all of the alleged discriminatory acts were committed by a foreign educational institution outside of New York State (*id.* at 20-21).

Sixth, Defendant argues that the Court should dismiss Plaintiff's breach-of-contract claim because a course syllabus (i.e., the document upon which Plaintiff bases this claim) does not constitute a valid contract. (*Id.* at 21-22.)

Seventh, Defendant argues that the Court should strike the Defendant's request for punitive damages because these damages are not legally recoverable for the claims Plaintiff asserts in his Complaint. (*Id.* at 22-23.)

### 2. Plaintiff's Opposition to Defendant's Motion to Dismiss and Plaintiff's Cross-Motion for Leave to Amend the Complaint

Generally, in opposition to Defendant's motion to dismiss and in support of his cross-motion for leave to amend, Plaintiff sets forth eight arguments. (Dkt. No. 14.)

First, Plaintiff argues that the Clinical Staff at Plaintiff's clinical placement, including Octavio Gonclaves (i.e., Plaintiff's clinical coordinator), are agents of Defendant. (*Id.* at 3-4.)

---

[1]     Defendant also argues that due to Plaintiff's federal claims failing as a matter of law, the Court should not exercise supplemental jurisdiction over Plaintiff's state law claims if the Court finds these claims survive the motion to dismiss. (Dkt. No. 9-1, at 19, n. 8.)

Alternatively, Plaintiff argues that allegations in his Proposed Amended Complaint ("PAC")
(Dkt. No. 15-26) show as follows: (1) Defendant had a contractual relationship with Gonclaves
and his employer, Griffin Hospital; (2) Karen Hurd, the Assistant Program Director, participated
as a preceptor at the clinical placement; and (3) Defendant's other staff substantially interfered
with Plaintiff's participation in the Program. (Dkt. No. 14, at 3.) Plaintiff argues that these facts
show that his claims must survive Defendant's motion to dismiss. (*Id.*)

Second, Plaintiff argues that the Court has general personal jurisdiction over Defendant
because Plaintiff's PAC contains allegations about Defendant's substantial and continuous ties to
New York. (*Id.* at 4-5; Dkt. No. 15-26, at ¶¶ 2, 8, 99-102 [Plf.'s Proposed Amended Complaint].)
Specifically, Plaintiff argues that, not only does Defendant solicit students from New York State
more than from any other state outside of Connecticut, but Defendant maintains contractual
relationships with New York State-based institutions and sends students to those institutions for
clinical coursework. (Dkt. No. 14, at 5.) Plaintiff also argues that he attended Defendant's
Program in hopes of having a clinical placement in New York State and/or having a program that
is connected to New York State to have a better chance at securing a job in the state. (*Id.*)
Plaintiff argues these allegations in his PAC establish general personal jurisdiction over
Defendant in New York. (*Id.*)

Third, Plaintiff argues that the Court has specific personal jurisdiction[2] over the
Defendant. (*Id.* at 5-8.) Plaintiff argues that the facts he cites in the PAC and addresses with
respect to his arguments on general personal jurisdiction also support a finding of specific

---

[2]     Plaintiff's memorandum of law (Dkt. No. 14) refers to specific personal jurisdiction as
"diversity jurisdiction" but analyzes the jurisdictional question under New York's long-arm
statute. (Dkt. No. 14, at 5.) Based on the Plaintiff's arguments, the Court liberally construes this
argument as regarding "specific personal jurisdiction" and not "diversity jurisdiction."

personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1). (*Id.* at 5.) Specifically, Plaintiff argues that Defendant projects itself into New York State by soliciting state residents at disproportionately high rates, as shown by its student population and offerings of clinical coursework at New York State-based institutions. (*Id.* at 8.)

Fourth, Plaintiff argues that the PAC remedies any factual defect regarding Defendant's argument that he does not adequately allege his disability or requested accommodations. (*Id.* at 8-11.) Plaintiff argues that the Court may find a Section 504 hostile environment claim is cognizable and may also apply the theory of constructive discharge because the facts Plaintiff alleges in the PAC show Defendant continually made his attendance in the Program difficult and, even when he met the standards Defendant set, Defendant failed him by raising those standards and influencing a professor to lower Plaintiff's grade. (*Id.*)

Fifth, Plaintiff argues that his PAC remedies any factual defect regarding Defendant's argument that he does not adequately allege facts supporting his Title VI race discrimination claim. (*Id.* at 11-12.) Plaintiff argues that it is fair for the Court to infer discriminatory intent or outright discrimination because Defendant treated similarly situated white students differently than they treated Plaintiff. (*Id.*)[3]

Sixth, Plaintiff concedes that he may not have a cause of action under the NYSHRL because although Defendant initiated contact with Plaintiff in New York State, the actionable claims of discrimination substantially occurred when Plaintiff was in Connecticut. (*Id.* at 12.)

Seventh, Plaintiff argues that the Court should not dismiss his breach-of-contract claim because a class syllabus could be considered a contract. (*Id.* at 12-14.) As support for this

---

[3]      In his memorandum of law, Plaintiff alleges for the first time that his Title VI claim is proposed in the alternative to his Section 504 claim. (Dkt. No. 14, at 11-12.)

argument, Plaintiff draws parallels to the possibility of contract formation from a university's website, brochures, or other media, and highlights the potential for an implied contract formed when a university accepts a student for enrollment. (*Id.*)

Eighth, Plaintiff concedes that it is well settled that punitive damages are not available under Section 504 or Title VI but argues that, in the same way that the Court may compare Section 504 and ADA claims of hostile education environment to a hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Court may award punitive damages for Plaintiff's claims by using the standards set forth in Title VII. (*Id.* at 14-15.) Plaintiff argues that the Court has leeway to find that an educational claim under NYSHRL is comparable to an employment claim under the same statute and deserves analysis under Title VII standards, which would allow for punitive damages. (*Id.*)

### 3.    Defendant's Reply in Support of Its Motion to Dismiss and Response to Plaintiff's Cross-Motion for Leave to Amend the Complaint

Generally, in support of its reply to its motion to dismiss and response to Plaintiff's cross-motion for leave to amend the Complaint, Defendant sets forth eight main arguments. (Dkt. No. 18-1.)

First, Defendant argues that, even if all the allegations in Plaintiff's PAC are taken as true, the PAC fails to allege sufficient facts to overcome Defendant's motion to dismiss. (*Id.* at 9.) Defendant further argues that the failure to include sufficient allegations makes Plaintiff's request to amend the Complaint futile. (*Id.*)

Second, Defendant argues that the PAC does not allege sufficient facts for the Court to find it has personal jurisdiction over Defendant. (*Id.* at 10-13.) With respect to general personal jurisdiction, Defendant argues that federal courts in New York have held that universities and

colleges are not "at home" for purposes of general jurisdiction outside of their state of incorporation or principal place of business merely because they engage in "minimal and sporadic contact" with a state "that is common to all universities." (*Id.* at 10.) Defendant argues that courts have found that recruitment, solicitation, and even an exchange program in New York State are insufficient contacts to establish general jurisdiction over a university in the state. (*Id.* at 11.) Defendant argues that the following facts support the lack of general personal jurisdiction over Defendant in New York State: (1) Plaintiff concedes in his opposition motion and cross-motion that the "actionable claims of discrimination substantially occurred . . . in Connecticut" (*id.*); (2) even if Plaintiff's claims regarding Defendant's recruitment activities are true, those activities are not enough for the Court to establish general personal jurisdiction over Defendant (*id.* at 11-12); (3) Defendant has no branch campuses in New York State, does not own property in New York State, and has no bank accounts, telephone numbers, or mailboxes in New York State (*id.* at 12; Dkt. No. 9-2, at ¶¶ 9, 11, 15); and (4) Defendant derives no revenue from the State of New York. (Dkt No. 18-1, at 12; Dkt. No. 9-2, at ¶ 16.)

Defendant also argues that the allegations in the PAC do not show the Court has specific personal jurisdiction over Defendant. (*Id.* at 12-13.) Specifically, Defendant incorporates by reference portions of its arguments regarding general personal jurisdiction in its argument that even if the Court finds that Defendant engages in some business in New York State, there is no nexus between that business and Plaintiff's claims, as is required to establish specific personal jurisdiction under N.Y. C.P.L.R. § 302. (*Id.* at 13.)

Third, Defendant argues that the PAC remains devoid of any facts showing that Plaintiff is a qualified individual with a disability because, although Defendant granted Plaintiff testing

accommodations for the semester at issue, the PAC does not contain specific factual allegations that Plaintiff's documented disability affected his major life activities during that time. (*Id.* at 14-16.) Defendant argues that the PAC also fails to show that Plaintiff was discriminated against solely because of his disability because the PAC does not allege that any of Defendant's staff who implemented the alleged adverse actions knew about Plaintiff's disability. (*Id.* at 15-16.) Defendant further argues that its reinstatement of Plaintiff to the Program belies an inference that any alleged discriminatory action taken against Plaintiff was solely because of his disability. (*Id.* at 16, n. 12.)

Fourth, Defendant restates the point of law that the Second Circuit has not recognized the viability of a hostile learning environment claim under Section 504. (*Id.* at 16-18.) Defendant argues that, even if such claim is viable, Plaintiff fails to allege that Defendant's conduct was severe and pervasive conduct and that it was caused by Plaintiff's disability. (*Id.* at 17.) Defendant further argues that Plaintiff has no basis to assert a constructive discharge claim here because the facts alleged in the PAC are legally insufficient to support such a claim. (*Id.* at 17-18.)

Fifth, Defendant argues that Plaintiff's new allegations in the PAC that Defendant treated him less favorably than a Caucasian student do not save his Title VI race discrimination claim because the PAC provides no additional facts supporting a reasonable finding that Plaintiff and the individual were similarly situated. (*Id.* at 18-19.) Defendant argues that, although the PAC mentions vague conversations with unidentified individuals about Defendant evaluating "other students" less frequently than Plaintiff, these conversations constitute inadmissible hearsay and do not entitle Plaintiff to an inference that Defendant subjected him to race-based discrimination.

11

(*Id.* at 19.)

Sixth, Defendant argues the Court should dismiss Plaintiff's Title VI race-based hostile

learning environment claim because the PAC does not sufficiently allege that Plaintiff was the

victim of "severe, pervasive, and objectively offensive" harassment. (*Id.* at 19-20.) Defendant

also argues that the PAC does not allege Defendant had any reason to suspect Plaintiff believed

he was a victim of severe and pervasive harassment based on his race. (*Id.* at 20.)

Seventh, Defendant argues that the Court should dismiss the NYSHRL claims because

Plaintiff concedes that these claims fail as a matter of law. (*Id.*)

Eighth, Defendant argues that Plaintiff's breach-of-contract claim fails because Plaintiff

has no legal support that the class syllabus constitutes an express or implied contract. (*Id.* at 21.)[4]

## II.     RELEVANT PROCEDURAL LEGAL STANDARDS

### A.     Legal Standard Governing a Motion to Dismiss for Lack of Personal Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of

personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120,

2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005); *accord, Eades v. Kennedy, PC Law Offices*,

799 F.3d 161, 167-68 (2d Cir. 2015). "First, personal jurisdiction over a defendant must be

established under the law of the state where the federal court sits." *Harris,* 2005 WL 503935, at

*1 (citing *Bank Brussels Lamber v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir.

1999)); *accord, Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). "Under Rule

---

[4]     The Court finds that Plaintiff has not shown cause for his request for leave to file a reply
brief on his cross-motion to amend and that the parties adequately briefed the jurisdictional
question. The Court accordingly denies Plaintiff's request to file a reply brief in support of his
cross-motion. *See* N.D.N.Y. L.R. 7.1(c) ("The cross-moving party may not reply in further
support of its cross-motion without the Court's prior permission.").

4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes

personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of

general jurisdiction in the state in which the district court is located.'" *Harris*, 2005 WL 503935,

at \*1 (citation omitted).

"Second, if jurisdiction is established under the governing statute, courts must determine

whether the exercise of jurisdiction under the relevant state law would violate the defendant's

due process rights." *Id.* (citation omitted); *accord, Best Van Lines, Inc.*, 480 F.3d at 242-43.

These due process rights require that the defendant have minimum contacts with the forum state

and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair

play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must

make a prima facie showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank, SAL*, 732

F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)). In

determining whether the required showing has been made, district courts "construe the pleadings

and any supporting materials in the light most favorable to the plaintiffs." *Licci*, 732 F.3d at 167

(quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010)); *accord,*

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *Hoffritz for Cutlery,*

*Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction, a district court

has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904

(2d Cir. 1981). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff need

only make "a prima facie showing of jurisdiction through its own affidavits and supporting

13

materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). What this means is that, "prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* (internal quotation marks and citations omitted); *accord*, *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) ("Such a [*prima facie*] showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'" (quoting *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam)). However, where a defendant "rebuts [a plaintiff's] unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction—and plaintiff[] do[es] not counter that evidence—the allegation may be deemed refuted." *MEE Direct LLC v. Tran Source Logistics, Inc.*, 12-CV-6916, 2012 WL 6700067, at *2 (S.D.N.Y. Dec. 26, 2012) (citation, internal quotation marks, and footnote omitted).

### B.   Legal Standard Governing a Motion to Dismiss for Failure to State a Claim

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a

pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (emphasis added). In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n. 20 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002)). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Id.* at 212, n.17 (emphasis added).[5]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Id.* at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F.Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). "As a result, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet this liberal notice pleading standard." *Rusyniak,* 629 F.Supp.2d at 214; *Ashcroft v.*

---

[5]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y.1995) (McAvoy, C.J.).

*Iqbal*, 556 U.S. 662, 677-83, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations

16

omitted).  However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

### C.    Legal Standards Governing a Motion to Amend a Pleading

A motion for leave to amend a complaint is governed by Fed. R. Civ. P. 15, which states that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Manson v. Stacescu*, 11 F.3d 1127, 1133 (2d Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend a complaint should be freely given "[i]n the absence of any apparent or declared reason to not grant leave to amend[,] such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." *Foman*, 371 U.S. at 182; *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block-Bldg. 1 Hous.*, 608 F.2d 28, 42 (2d Cir. 1979); *Meyer v. First Franklin Loan Servs., Inc.*, 08-CV-1332, 2010 WL 277090, at *1 (N.D.N.Y. Jan. 19, 2010) (Suddaby, J.); *Jones v. McMahon,* 98-CV-0374, 2007 WL 2027910, at *10 (N.D.N.Y. July 11,

2007) (Lowe, M.J.). "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss . . . ." *Annunziato v. Collecto, Inc.*, 293 F.R.D. 329, 333 (E.D.N.Y. 2013) (citing *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)).

## III.   ANALYSIS

### A.   Whether the Court Should Dismiss Plaintiff's Complaint for Lack of Personal Jurisdiction

After carefully considering the matter, the Court answers the question in the affirmative for the reasons stated in Defendant's memoranda of law. (Dkt. Nos. 9-1, 18-1.) To those reasons, the Court adds the following analysis.

"There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to [N.Y. C.P.L.R. § 301] . . . or specific jurisdiction pursuant to [CPLR 302]." *Bartosiewicz v. Nelsen*, 20-CV-6513, 2021 WL 4451445, at *3 (W.D.N.Y. Sept. 29, 2021) (citation and quotation marks omitted). "General, all-purpose jurisdiction permits a court to hear 'any and all claims' against an entity. Specific jurisdiction, on the other hand, permits adjudicatory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum." *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014); *Bartosiewicz*, 2021 WL 4451445, at *3 (internal citation and quotation marks omitted).

### 1.   General Personal Jurisdiction Under N.Y. C.P.L.R § 301

"[A] corporation is subject to personal jurisdiction under [N.Y.] C.P.L.R. § 301 with respect to any cause of action, arising or not arising out of contacts with New York, if a company 'has engaged in such a continuous and systematic course of doing business [in New York] that a finding of its presence [in New York] is warranted.'" *Car-Freshner Corp. v. Scented Promotions, LLC,* 19-CV-1158, 2021 WL 1062574, at *5 (N.D.N.Y. Mar. 19, 2021) (Suddaby,

C.J.) (quoting *DeLorenzo v. Viceroy Hotel Grp.*, 757 F. App'x 6, 8 (2d Cir. 2018)); *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 762 (2d Cir. 1983). "Due process further requires that a foreign corporation be subject to general jurisdiction only if its contacts are so 'continuous and systematic,' judged against the corporation's national global activities, that it is 'essentially at home' in the state." *Car-Freshner Corp.*, 2021 WL 1062574, at *5 (citation and quotation marks omitted). "Aside from 'an exceptional case,' a corporation is at home (and thus subject to general jurisdiction, consistent with due process) only in a state that is the company's formal place of incorporation or its principal place of business." *Id.* (citation and quotation marks omitted).

Here, Defendant's place of incorporation is not New York State. Defendant was incorporated in the State of Connecticut in 1929. (Dkt. No. 9-2, at ¶ 3.) Plaintiff does not contest these facts. (Dkt. Nos. 14, 15-26.)

The PAC also fails to allege that Defendant's "principal place of business" is in New York State or that Defendant has such "continuous and systematic" contacts with New York State to show that this is an "exceptional case" subjecting Defendant to general personal jurisdiction in New York. *Car-Freshner Corp.*, 2021 WL 1062574, at *5.

Instead, Plaintiff asserts the following in support of the Court's exercising of general personal jurisdiction over Defendant: (1) Defendant solicits students from New York State more than from any other state, except Connecticut;[6] (2) Defendant maintains contractual relationships with New York State-based institutions and sends its students to those institutions for clinical

---

[6]     Defendant contests this assertion, stating that "[a]lthough students from more than 45 states attended [Defendant's institution] during the 2018-2019 academic year, far more of its students . . . were from Connecticut than any other state." (Dkt. No. 9-2, at ¶ 17.)

coursework; and (3) Plaintiff attended Defendant's Program in hopes of receiving a clinical

placement in New York State and/or having a better opportunity to secure a job in New York

State after completion of the Program. (Dkt. No. 14, at 5; Dkt. No. 15-26, at ¶¶ 8, 99-102.)

Although Defendant admits that it "maintains some affiliations between [itself] and health care

institutions in New York, wherein the institutions agree[] to host qualified students for clinical

learning experiences," Defendant also asserts the following to refute that it is subject to general

personal jurisdiction in New York State: (1) Defendant's campuses are located in Connecticut;

(2) Defendant conducts all of its business affairs out of one of the Connecticut campuses; (3)

Defendant's bank accounts and all but one mailbox and telephone listing[7] are in the State of

Connecticut; (4) Defendant does not own, possess, lease, or maintain property in New York

State, nor does it maintain any offices or other facilities in the state; (5) Defendant does not

maintain a resident agent for service of process in New York State; (6) Defendant does not hold

a license to do business in New York State and does not have a state tax identification number;

and (7) Defendant does not derive any income or revenue from goods used or services rendered

in New York State. (Dkt. No. 9-2, at ¶¶ 5-16; Dkt. No. 9-1, at 7.)

  Based on these facts, the Court finds that Defendant's principal place of business is not in

the State of New York, but in the State of Connecticut.[8] The minimal contacts Plaintiff alleges,

---

[7] The mailbox and telephone listing not within the State of Connecticut are in the State of California and are associated with the Director of Defendant's University in Los Angeles program. (Dkt. No. 9-2, at ¶ 8.)

[8] *See Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Court of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center,' and not simply an office where the corporation holds its board meetings . . . .").

even if accepted as true, do not make this an "exceptional case" in which the Court may exercise general personal jurisdiction over Defendant in a state where it is not incorporated nor holds its principal place of business. *See Al-Ahmed v. Twitter, Inc.*, 20-CV-4982, 2021 WL 3604577, at *4 (S.D.N.Y. Aug. 11, 2021) ("'[W]hen a corporation is neither incorporated nor maintains its principal place of business in a state, mere contacts, no matter how systematic and continuous, are extraordinarily unlikely to add up to an exceptional case.'") (quoting *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016)); *Thackurdeen v. Duke Univ.*, 130 F.Supp.3d 792, 799-801 (S.D.N.Y. 2015) (gathering cases in support of the principal that "national universities are not subject to general jurisdiction outside of their state of incorporation or operation"); *Meyer v. Bd. of Regents of Univ. of Okla.*, 13-CV-3128, 2014 WL 2039654, at *2-4 (S.D.N.Y. May 14, 2014), *remanded on different grounds by Meyer v. Bd. of Regents of Univ. of Okla.*, 597 F. App'x 27 (2d Cir. 2015).[9] The Court has no basis to exercise general personal jurisdiction over Defendant.

### 2.    Specific Personal Jurisdiction Under N.Y. C.P.L.R. § 302

New York's long-arm statute, N.Y. C.P.L.R. § 302, provides four ways a court may have specific personal jurisdiction over a non-domiciliary defendant:

> (1) where the non-domiciliary transacts any business within the state or contracts anywhere to supply goods or services in the state; (2) where the non-domiciliary commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; (3) where the non-domiciliary commits a tortious act without the state that causes injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he (i) regularly

---

[9]    (*See also* Dkt. No. 18-1 at 10-11, n.5 [citing multiple federal cases holding general personal jurisdiction over a university or college does not exist in similar factual scenarios].)

does or solicits business, or engages in any other persistent course
of conduct, or derives a substantial revenue from goods used or
consumed or services rendered, in the state, or (ii) expects or
should reasonably expect the act to have consequences in the state
and derives substantial revenue from interstate or international
commerce; or (4) the non-domiciliary owns, uses, or possesses any
real property situated within the state.

*Car Freshner Corp.*, 2021 WL 1062574, at *5 (citing N.Y. C.P.L.R. § 302(a)).

"Under CPLR § 302(a)(1) specifically, a plaintiff must establish that (a) the defendant

transacted business within the state, and (b) the claim asserted arises from that business activity."

*Id.* at *6 (citing *Licci,* 732 F.3d at 168). "As to whether the defendant transacted business in the

state, the defendant 'must purposefully "avail itself of the privilege of conducting activities

within the forum State."'" *Id.* (quoting *Berkshire Capital Grp., LLC v. Palmet Ventures, LLC*,

307 F. App'x 479, 481 (2d Cir. 2008) (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380 (N.Y.

2007)). "Courts look to 'the totality of the defendant's activities within the forum' . . . to

determine whether a defendant has 'transact[ed] business' in such a way that it constitutes

'purposeful activity' satisfying the first part of the test." *Best Van Lines*, 490 F.3d at 246

(quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs*, 510 F.2d 870, 873 (2d

Cir. 1975)).

Plaintiff's PAC contains the following allegations relevant to personal jurisdiction: (1)

"[u]pon information and belief, Defendant is a private university receiving federal funds located

in New Haven County, Connecticut" (Dkt. No. 15-26, at ¶ 2); (2) "Plaintiff, from New York,

chose to apply and attend Defendant's program based on advertisements and other media he

received while residing in New York and based on the Defendant's ties to New York as it

maintained partnerships for clinical placements with New York-based institutions and many of

22

the faculty have professional experience within New York-based institutions" (*id.* ¶ 8); (3) "Defendant has substantial ties to New York State in that it recruits a large percent (25% students are from New York and only 27% of Students are from Connecticut) of its students, Defendant advertises its proximity to New York, and a substantial amount of its revenue from residents in New York State based on the high percentage of students that matriculate from New York" (*id.* ¶ 99); (4) "Plaintiff has confirmed that during the Spring 2019 semester, Defendant also offered a clinical placement with a facility in New York State and had a contractual relationship with that facility. Defendant still maintains contractual relationships with facilities in New York State where it places students to complete clinical course assignments" (*id.* ¶ 100); (5) "[o]ther observations on Defendant's website and through basic web searches show Defendant conducts other business in New York State outside of the nursing program at issue in this case, including but not limited to the Quinnipiac Poll and events hosted by various other programs in New York State (e.g., business school)" (*id.* ¶ 101); and (6) "[m]any of the Defendant's staff in the program at issue here have mostly professional experience from employment in New York State" (*id.* ¶ 102).

The Court need not determine whether these allegations, if taken as true, show that Defendant "transacted business within the state" because Plaintiff does not argue, nor does a review of these allegations show, that Plaintiff's claims "arise out of the business activity" that Defendant allegedly conducts in New York State. *Car-Freshner Corp.*, 2021 WL 1062574, at *5. For specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(1), there must be "'an articulable nexus, or a substantial relationship, between the claim[s] asserted and the actions that occurred in New York.'" *Al-Ahmed*, 2021 WL 3604577, at *5 (quoting *Best Van Lines*, 490 F.3d

at 246)). "'At the very least, there must be a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former.'" *Afanassieva v. Page Transp., Inc.*, 20-CV-1109, 2021 WL 4458686, at *4 (N.D.N.Y. Sep. 29, 2021) (Sharpe, J.) (quoting *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 298-99 (N.Y. 2017). "[A]n articulable nexus or substantial relationship exists where at least one element arises from the New York contacts . . . ." *Id.* (citation and quotation marks omitted).

Plaintiff admits in his opposition motion and cross-motion that "the actionable claims of discrimination substantially occurred when Plaintiff was in Connecticut with a few exceptions." (Dkt. 14, at 12, ¶ 40.) A review of Plaintiff's PAC confirms the lack of "articulable nexus" between Defendant's contacts with New York and Plaintiff's claims. (Dkt. No. 15-26.) At all relevant points in time, Plaintiff attended Defendant's institution in Connecticut and completed his clinical coursework at Griffin Hospital in Derby, Connecticut. (*Id.* ¶¶ 7-102.) The alleged discriminatory actions at issue in this case all occurred in Connecticut, including the following: (1) Defendant's failure to accommodate Plaintiff's disability in 2016-2017; (2) the search of Plaintiff's locker and drug testing in Spring 2019; (3) Defendant's placement of Plaintiff on Clinical Learning Plans in Spring 2019 and its corresponding effect on Defendant's treatment of Plaintiff in comparison to other students in the Program; (4) Defendant's decision to fail Plaintiff after he achieved a passing grade; and (5) the decision to dismiss Plaintiff from the Program on May 17, 2019. (*Id.* ¶¶ 19-28, 38-87, 94-97.) The appeals' process for Plaintiff's dismissal from the Program occurred in Connecticut. (*Id.* ¶¶ 88-93.) Plaintiff received the course syllabus (i.e., the basis of his breach of contract claim) while attending the Program in Connecticut, and Defendant implemented the syllabus within the State of Connecticut. (*Id.* ¶¶ 32, 81-87, 110-11,

24

119, 124, 128-131.) Plaintiff has not shown that his claims relate to Defendant's alleged

advertisements or clinical placements in New York State, recruitment of New York State

students, or the other contacts on which Plaintiff relies to establish specific personal jurisdiction.

*Meyer*, 2014 WL 2039654, at *1. The Court therefore cannot exercise specific personal

jurisdiction under N.Y. C.P.L.R. § 302(a)(1).

N.Y. C.P.L.R. § 302(a)(2) establishes specific personal jurisdiction "where the non-

domiciliary commits a tortious act within the state . . . ."[10] "'Typically, a "defendant's physical

presence in New York is a prerequisite to jurisdiction under § 302(a)(2)."'" *Hunter v. Shanghai*

*Huangzhou Elec. Appliance Mfg. Co., Ltd.*, 17-CV-00052, 2020 WL 5258313, at *7 (N.D.N.Y.

Sept. 3, 2020) (Sannes, J.) (quoting *Bank Brussels Lambert*, 171 F.3d at 790)). As discussed

above, because Plaintiff's PAC does not allege any tortious conduct occurred in New York State,

the Court may not exercise specific personal jurisdiction over Defendant pursuant to N.Y.

C.P.L.R. § 302(a)(2).

Nor has Plaintiff alleged any facts in the PAC that specific personal jurisdiction is proper

under N.Y. C.P.L.R. § 302(a)(3).

> Section 302(a)(3) provides long-arm jurisdiction against a non-domiciliary
> who commits a tortious act outside of New York that causes injury inside
> New York if the non-domiciliary (a) regularly does business in New York,
> engages in any persistent course of conduct in New York, or derives
> substantial revenue from goods used or consumed or services rendered in
> New York, or (b) expects or should reasonably expect the tortious act to
> have consequences in New York and derives substantial revenue from
> interstate or international commerce.

*Al-Ahmed*, 2021 WL 3604577, at *6; *Air Innovations, Inc. v. Barker Co., Ltd.*, 08-CV-1305,

---

[10]     Plaintiff does not specifically argue that Defendant is subject to specific personal
jurisdiction under other portions of N.Y. C.P.L.R. § 302(a), but the Court includes the remaining
analysis for the sake of thoroughness. (Dkt. No. 14, at 5-8.)

2010 WL 11494032, at *6 (N.D.N.Y. June 17, 2010) (Suddaby, J.) ("Under Section 302(a)(3), Plaintiff must show both that an injury occurred within the state, and that the elements of either clause (i) or (ii) have been satisfied.") (citation and quotation marks omitted). "[F]or section 302(a)(3) to apply, '(1) a defendant must have committed a tortious act outside New York, (2) the cause of action must arise from that tortious act, and (3) the act must have caused injury to a person or property within New York.'" *Al-Ahmed*, 2021 WL 3604577, at *6 (quoting *Doe v. Del. State Police*, 939 F.Supp.2d 313, 325-26 (S.D.N.Y. 2013)). Plaintiff does not allege, nor could he, that the discriminatory actions caused injury to a person or property *within* New York, rendering the Court without personal jurisdiction over Defendant under § 302(a)(3). *Id.*; *Air Innovations, Inc.,* 2010 WL 11494032, at *6.

The Court also may not exercise specific personal jurisdiction over Defendant under N.Y. C.P.L.R. § 302(a)(4), which arises when the "non-domiciliary owns, uses, or possesses any real property situated within the state." Plaintiff's opposition motion and cross-motion (Dkt. No. 14) do not assert specific personal jurisdiction under this statutory subsection, nor do the factual allegations in the PAC support this form of specific personal jurisdiction (Dkt. No. 15-26). (*See also* Dkt. No. 9-2, at ¶ 9 [asserting Defendant "does not own, possess, lease or maintain any interest in any real property in the State of New York, nor does it maintain any offices or other facilities in the State of New York."].)

Because Plaintiff's PAC does not contain factual allegations sufficient to establish the requisite elements of specific personal jurisdiction under N.Y. C.P.L.R. § 302, the Court may not exercise specific personal jurisdiction over Defendant in this case.

    A.    Whether the Court May Alternatively Dismiss Plaintiff's Complaint for Failure to State a Claim

26

Because the Court has already found an adequate ground exists upon which to base a grant of Defendant's motion, the Court need not (and does not) render any finding regarding whether Plaintiff's Complaint fails to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### B.   Whether Plaintiff Should Be Granted Leave to Amend

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 18-1.) To those reasons, the Court adds the following analysis.

As discussed above in Part I(B) of this Decision and Order, Defendant opposes Plaintiff's cross-motion to amend by arguing that amendment would be futile because, even with the proposed amendments, Plaintiff still has not properly shown this Court has personal jurisdiction over Defendant. (*Id.* at 9.) "[I]f the [proposed amended complaint] or other evidence provided by the Plaintiff in support of his cross-motion fails to provide a prima facie basis for exercising personal jurisdiction over the Defendant, then the Plaintiff's cross-motion to amend will be denied as futile." *Giusto v. Rose & Womble Realty Co., LLC*, 15-CV-5249, 2016 WL 4544038, at *5 (E.D.N.Y. Aug. 31, 2016) (citing *Spiegel v. Schulmann*, 604 F.3d 72, 78 (2d Cir. 2010)).

Because the Court agrees that, even when the added jurisdictional allegations contained in the PAC are considered, Plaintiff fails to establish that this Court may exercise personal jurisdiction over Defendant, the Court finds that amendment would be futile and denies Plaintiff's cross-motion for leave to amend.[11]

---

[11]     *See Foman*, 371 U.S. at 182 (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the

C.      **Whether the Court Should, In the Interest of Justice, Sua Sponte Transfer the Case to the District of Connecticut**

After carefully considering the matter, the Court answers this question in the negative, for the following reasons.

"Although the Court has found . . . a lack of personal jurisdiction, it is well settled that a lack of personal jurisdiction does not prevent the Court from transferring the case." *Pisani v. Diener*, 07-CV-5118, 2009 WL 749893, at *8 (E.D.N.Y. Mar. 17, 2009) (citation omitted). The Second Circuit addressed this issue in *SongByrd, Inc. v. Estate of Grossman*:

> At one time, our Court ruled that a district court lacking personal jurisdiction had no power to transfer, *see Goldlawr, Inc. v. Heiman*, 288 F.2d 579, 586 (2d Cir. 1961), but the Supreme Court reversed that ruling and made clear that a district court lacking both personal jurisdiction and proper venue could transfer under section 1406(a) to a district where both defects were avoided, *see Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962). Thereafter, we ruled that, whether or not venue was proper, lack of personal jurisdiction could be cured by transfer to a district in which personal jurisdiction could be exercised, with the transfer authority derived from either section 1406(a) or 1404(a). *See Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir. 1978) (adopting Judge Winfield's view in *Volk Corp. v. Art-Pak Clip Art Service*, 432 F. Supp. 1179, 1181 & nn. 4-5 (S.D.N.Y. 1977)). *See generally* 17 *Moore* s. 111.02[1][b].

206 F.3d 172, 179, n. 9 (2d Cir. 2000); *see also Gaymar Indus., Inc. v. FirstMerit Bank, N.A.*, 06-CV-70S, 2007 WL 894217, at *6 (W.D.N.Y. Mar. 21, 2007) ("A court may transfer an action

---

amendment, futility of amendment, etc."); *Gray v. White*, 18-CV-1408, 2020 WL 4284134, at *9 (N.D.N.Y. July 27, 2020) (Suddaby, C.J.) ("Because Plaintiff is ably represented by counsel . . . and has not reasonably indicated that he could allege additional facts to [show personal jurisdiction exists in this case], the Court finds that it need not afford Plaintiff a further opportunity to amend the [] Complaint before dismissal."); *Barnes v. Crist*, 13-CV-0505, 2014 WL 1293408, at *1 (N.D.N.Y. Mar. 28, 2014) (Suddaby, C.J.) ("As the Second Circuit has explained, '[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'") (quoting *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).

28

to another venue even if it lacks personal jurisdiction over the defendants."); *Haidon v Budlong & Budlong, LLC*, 318 F.Supp.3d 568, 581 (W.D.N.Y. 2018).

"Furthermore, although the Court recognizes that none of the parties requested transfer (in the alternative) in connection with the motions to dismiss, the Court properly considers the issue, in its discretion, *sua sponte* given the absence of venue or personal jurisdiction in this District." *Pisani*, 2009 WL 749893, at *8 (citing cases supporting this proposition).[12] The Court, for purposes of this Decision and Order, will assume venue is proper and will address the decision to transfer pursuant to 28 U.S.C. § 1404(a).[13]

Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." A review of the facts alleged in the Complaint, as well as Defendant's assertions as to why

---

[12]    *See also Gaymar Indus., Inc.,* 2007 WL 894217, at *6 ("A district court may transfer a case on a motion by either party or sua sponte."); *Interested London Underwriters v. Kelly Global Logistics, Inc.*, 06-CV-5845, 2008 WL 558038, at *5 (S.D.N.Y. Feb. 29, 2008); *Songbyrd, Inc.*, 206 F.3d at 181.

[13]    *See Yurasov-Lichtenberg v. Betz*, 15-CV-1430, 2016 WL 4544031, at * 7, n. 7 (E.D.N.Y. Aug. 30, 2016) ("The Court may transfer pursuant to 28 U.S.C. § 1404(a) where venue is proper, and pursuant to 28 U.S.C. § 1406(a) where it is not. The end result of transfer under section 1404 and section 1406 is the same. Here defendants have not challenged venue. Accordingly, for purposes of this motion, the Court will assume venue is proper and proceed under section 1404(a).") (internal citations omitted); *Matra Et Manurhin v. Int'l Armament Co.*, 628 F. Supp. 1532, 1534, n. 2 (S.D.N.Y. 1986) ("[I]t is clear that if the action is properly transferable pursuant to § 1404(a), assuming venue is proper in this district, then *a fortiori* the action will also be properly transferable pursuant to § 1406(a), assuming venue in this district is improper. For the purposes of this motion to transfer therefore, the Court will assume venue is proper in this district and proceed under § 1404(a)."); 15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Fed. Prac. and Proc.* § 3827, at 265-66 (2d ed. 1986) ("The end result is the same, and very few litigants will care whether the court purports to proceed under Section 1404(a) or Section 1406(a) in transferring to a district where personal jurisdiction can be exercised over the defendant.").

personal jurisdiction in New York is improper, indicate venue and jurisdiction would be proper

in the United States District Court for the District of Connecticut. The events underlying

Plaintiff's claims occurred in Connecticut, nearly all the involved parties reside in Connecticut,

and most, if not all, of the evidence remains in Connecticut.[14]

However, "[c]ourts enjoy considerable discretion in deciding whether to transfer a case in

the interests of justice." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005).

"A 'compelling reason' for transfer is generally acknowledged when a plaintiff's case, if

dismissed, would be time-barred on refiling in the proper forum." *Daniel*, 428 F.3d at 435

(citation omitted).[15] The Second Circuit has held that "actions under § 504 of the Rehabilitation

Act are governed by the state statute of limitations applicable to personal injury actions." *Morse*

*v. Univ. of Vermont*, 973 F.2d 122, 127 (2d Cir. 1992). Conn. Gen. Stat. § 52-577 provides that

"[n]o action founded upon a tort shall be brought but within three years from the date of the act

or omission complained of." *See also Ellis v. Dep't of Developmental Servs.*, 17-CV-1766,  2018

WL 8729587, at *3 (D. Conn. Aug. 22, 2018) ("[T]he three-year statute of limitations set forth in

Section 52-577 of the Connecticut General Statutes is applicable to the plaintiff's Rehabilitation

Act claims."); *Dervishi v. Holland*, 14-CV-01125, 2015 WL 3948972, at *2 (D. Conn. June 29,

---

[14]     *See Yurasov-Lichtenberg*, 2016 WL 4544031, at *8 ("28 U.S.C. § 1391(b)(2) states: '[a] civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]' It is clear that a 'substantial part of the events' that gave rise to [Plaintiff's] claim occurred in Collier County, Florida, located in the Middle District of Florida. Therefore, this action 'might have been brought' in the Middle District of Florida."); *Gaymar Indus., Inc.*, 2007 WL 894217 at *6 ("As is apparent from the foregoing discussion, all events material to this action took place in Ohio and this case could have been brought in the United States District Court for the Northern District of Ohio. Therefore, in the interests of justice, this Court will transfer this case there.").

[15]     *Corke*, 572 F.2d at 80-81 ("In our view, refusal to transfer would severely prejudice appellant . . . . Appellant's prejudice would flow from the Florida statute of limitations, . . . [which] would clearly bar institution of a new action."); *Yurasov-Lichtenberg*, 2016 WL 4544031, at *8.

2015). The *Morse* court acknowledged that § 504 of the Rehabilitation Act was modeled on Title VI of the Civil Rights Act of 1964, *id.*, leading the United States District Court for the District of Connecticut to hold that "Title VI claims are also governed by Connecticut's three-year limitation period." *Chisolm v. United of Omaha Life Ins. Co.*, 514 F.Supp.2d 318, 325 (D. Conn. 2007). Plaintiff's breach-of-contract claim, on the other hand, is subject to a six-year statute of limitations. *See Ride, Inc. v. APS Tech., Inc.*, 612 F. App'x 31, 33-34 (2d Cir. 2015) ("[U]nder Connecticut law, there is a six-year statute of limitations period for breaches of contract.") (citing Conn. Gen. Stat. § 52-576(a)).

According to the Complaint, Defendant dismissed Plaintiff from the Program in May 2019. (Dkt. No. 1, ¶¶ 49-50.) The Complaint indicates that Spring 2019 is the relevant time period with respect to Defendant's alleged discriminatory actions, because Plaintiff's practicum commenced on January 2, 2019. (*Id.* ¶¶ 7, 9.)[16] These actions fall well within the three-year statute of limitations for Plaintiff's Title VI and § 504 claims, as well as the six-year statute of limitations for Plaintiff's breach-of-contract claim.[17]

Because dismissal of this action will not preclude Plaintiff's refiling of his claims due to the relevant statute of limitations and because the parties, and most specifically, Plaintiff, have

[16]     *See Pajak v. N.Y. State Office of Temporary & Total Disability*, 16-CV-899, 2018 WL 4268915, at *6 (W.D.N.Y. Sept. 7, 2018) ("Though state statute governs the applicable limitations period here, '[f]ederal law governs the question of when a federal claim accrues.' 'Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action. In determining the accrual date for discrimination claims, including those brought under the Rehabilitation Act, 'the proper focus is on the time of the *discriminatory act*, not the point at which the *consequences* of the act become painful.'") (quoting *Morse*, 973 F.2d at 125); *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993).

[17]     Because Plaintiff concedes his NYSHRL claims in his memorandum of law (Dkt. No. 14 at 12), the Court assesses his other claims for purposes of its transfer decision.

not requested transfer in the alternative to dismissal, the Court declines to exercise its discretion and transfer the action *sua sponte*.

**ACCORDINGLY,** it is

**ORDERED** that Defendant's motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) (Dkt. No. 9) is <u>**GRANTED**</u>.

**ORDERED** that Plaintiff's cross-motion for leave to amend the Complaint (Dkt. No. 15) is <u>**DENIED**</u>.

**ORDERED** that Plaintiff's Complaint is **dismissed without prejudice.**

Date:   December 13, 2021
        Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge